The court will proceed to the fourth case, Dobbs v. Depuy. Mr. Keller? Good morning, Your Honors. Our underlying premise is straightforward. An attorney fired for wrongful conduct is not entitled to quantum merit. The fallout between Mr. Dobbs and counsel should have precluded quantum merit. Yet the counsel's wrongful conduct of breaching the contract, ethical rules, and fiduciary duties were disregarded twice by the district court. Dobbs has consistently pressed these issues, and he again raises them here. But even if the court declines Shouldn't the panel's prior opinion be read as implicitly rejecting your contentions that Mr. Dobbs, former counsel, should recover nothing at all? There would have been no point to the remand, would there? If the panel thought there were any merit to that argument, why would the panel have remanded? Yes and no, Your Honor, and I understand your concern. Yes and no. You're the first honorable lawyer to come before the court in a long time. Thank you, Your Honor. I try. As far as the original panel's decision, and obviously I'm in a delicate position seeing that two members are here today. Are sitting in front of you. Exactly, exactly. I think the court could have considered the three issues that counsel raised in the first appeal, which were, excuse me, the second, third, and fourth issue, which was the breach of contract, ethical rules, and fiduciary duties. The original appellate counsel framed the appeal, or framed the brief, as first attacking the quantum merit finding, and then in the alternative argued quantum merit shouldn't be considered. So in that regard, in the panel's defense, Your Honor's considered the first issue that was raised in the brief. It was in the alternative, right? Right, Your Honor, but at oral argument, I know the counsel did argue essentially that the case should be just completely tossed. So in that regard, even if these issues were implicitly considered, they're still incorporated in the quantum merit analysis, and that is because these three breaches, they explain why Dobbs did what he did. They eviscerate the notion that Dobbs tried to cheat counsel, or lie in wait to fire counsel, or unfairly benefit from counsel's work. Yet the district court's decision, and its decision again on remand, these notions were the catalyst for the court's decision. And with due respect to the district court, its portrayal of events is the exact opposite of what occurred. Counsel abandoned Dobbs after breaching the agreement to advance costs. Counsel then tried to negotiate a new retainer with terms adverse to Dobbs. Counsel's lien then thwarted Dobbs from seeking new representation. Thus, casting Dobbs as the villain defies the record. The appellee's brief evades all of this. Its fact section has an airy quality to it. Halfway down page 2, it states, Dobbs did not want to take the settlement and became frustrated with McLaughlin. That's it. Not a word about the events precipitating the breakdown, the breaches, or the emails. Yeah, but she did. You're talking about Judge Coleman now? Yes, Your Honor. But she did what the panel directed on remand, and she engaged in a genuine review of the relevant factors, did she not? She came up with the same number. Yes, Your Honor, and I would say she did not, for the reason being that she did not consider the context, the backdrop of what transpired. There's a very serious and meritorious allegation that this contract was breached, and this is an argument, again, that was raised and has been preserved, and the district court simply did not consider that. And it's not just what the district court missed in the wrongful conduct. It's also what the court found. The court found, contrary to the Seventh Circuit, that Mr. Dobbs fired counsel and accepted the settlement five days later. In reality, and again, as this court found, it was five months. The court also found that the appellees were the lead counsel. In actuality, they merely monitored the document. Is that the Scribner's error of some sort, the five days rather than five months? I mean, surely she knew. No, Your Honor, I would have to respectfully disagree with that. I believe, and I'm not saying with certainty, I believe the dates were in there in the second decision. And that finding, that's what led, that's what prompted the court's conclusion that Mr. Dobbs sought to have all the benefits of counsel without payment, that tight timeframe of five days. And that is, again, respectfully to the district court, that's an abuse of discretion. And these are significant mistakes that the appellee's brief simply shrugs off. Now, in the realm of quantum error with case law, this case is unique. We have a short-form complaint filed just two days after counsel was hired. The lead MDL attorneys, they do the heavy lifting, and they secure the settlement offer. The appellees never appeared in court, never conducted discovery, never engaged in motion practice. And Dobbs ultimately accepted the settlement five months later only because he could not secure new representation due to the lien and because the settlement window closed the following day. So this case is an anomaly. Another reason to reverse, how did Dobbs benefit from counsel's services? They didn't get him the $250,000 settlement offer. They didn't get him the $95,000 in enhancements. They didn't get him the opportunity to hold out for a higher settlement via the threat of trial. So counsel. Well, you know, we're talking, you know, most attorneys for claimants like Dobbs likely would have done pretty much the same amount of work. I mean, all of them were relying on lead counsel to do the heavy lifting in this case, and all of them reaped the benefit of the settlement negotiated by lead counsel. The differential settlement amounts for the represented and the unrepresentative claimants suggest that the represented claimants could be expected to pay fees of roughly $90,000. I mean, wouldn't that suggest that the quantum merit award entered by Judge Coleman was not an abuse of discretion? Well, Your Honor, as far as what counsel did here, Mr. Dobbs, the reason he hired counsel and hired this counsel was the notion, the ultimate goal of the trial. And whether he was misguided in that notion or not, that was what he wanted, and that was made clear in the original email. And in that original email, his concern is costs. What are the costs for a trial? Am I going to have to be responsible for these costs? So even from the beginning, from the outset, before the retainer was even signed, that was his foremost concern. And his concern was allayed by counsel, saying, don't worry about costs. We're going to handle these costs. So as far as what this counsel did, I agree with Judge Robner that at that point, that was all really what counsel was there to do. And MDL, the lead counsel, was there to do the heavy lifting. But at that point, that was kind of the put-up-or-shut-up moment. Mr. Dobbs wanted to proceed further, and counsel, based on the promise that counsel would advance costs. And counsel says, no, we're not advancing costs. So that was the juncture. But it's worrisome to me, and what concerns me, is that now there have been two appeals over a fee award of $87,500. And I'm wondering if the attorney hours expended on these appeals now outstrip the value of the disputed fees. Your Honor, that's an entirely valid concern. And I understand that concern, and you're probably right. And unfortunately, I know the court loathes attorney fee disputes, especially when it's here twice. But this is a matter of principle to Mr. Dobbs. He sustained these significant injuries, and he really believed he had a chance to go to trial. And there's some astronomical verdicts that are coming down in these cases. There was a billion-dollar verdict to six plaintiffs, another $247 million verdict to some other plaintiffs. So, I mean, there was an endgame here that Mr. Dobbs had. And, again, I think it's the broken promise, the email that says don't worry, we're going to advance costs, and then it smacks of a bait-and-switch. So that's our concern here. Thank you, Mr. Keller. Thank you, Your Honor. Mr. McLaughlin. May it please the Court, Counsel, I want to address that last issue first. I'm a trial lawyer. I've tried over 100 cases. I'm one of the few attorneys in this country that tried a hip case to verdict. After six weeks and $400,000 of expenses, we got a big verdict. And in my assessment of this case, I thought it was foolish for Mr. Dobbs not to accept the settlement, which he ultimately did accept. I actually went to the one DePue ASR trial that occurred here in Chicago and watched part of it. It was a defense verdict. Now, we're talking about things that aren't in the decision, in the record of the district court. The appellant is trying to use this forum to have a trial on whether or not I, as the attorney for what we call the McLaughlin group of attorneys in this case because I changed firms, we're trying to use this as a venue to have the trial on, well, gee, did I breach a contract? Did I violate ethics? There's no finding in the record anywhere here that any of that happened. As a matter of fact, if this was remanded, we'd end up with the same or more. We may. On the point that Judge Rovner raised, are we spending more time on the fees than this is worth? That's what I meant, but with regard to the ‑‑ if I may interrupt, the answer is yes, and that's not part of the claim here, but I want to tell you why I'm here because this isn't just my fee. My co‑counsel, Anthony Arguellos, died. He left a widow and two small children. He gets part of this fee, and I'm going to fight for that fee as far as we have to fight for that fee, even though it may not be worth my time. This is my fifth trip to Chicago to argue in front of a district court or an appellate court this fee. We also had a trip to Toledo where we mediated the fee with now a deceased judge who had handled the MDL. What counsel wants to argue, though, is that unless you're the lead counsel, then you didn't earn a fee representing anybody in a multidistrict litigation. I put into my affidavit, which is quite long, all of my experience. What isn't in my affidavit, it does say that I worked on the DePue ASR multidistrict litigation. I was on the discovery committee. I reviewed tens of thousands of pages of documents, probably a few hundred hours of time. None of that is my time for Mr. Dobbs. That's the work I did on the case. That's part of the expertise I brought here to Mr. Dobbs. We filed Mr. Dobbs' case. If we didn't, the statute of limitations would have expired and he wouldn't have had a claim unless he found someone else to take his case, which he probably would have on the same terms that we took it. Mr. Dobbs' case did benefit from what I did because if we had not filed his case and he didn't have an attorney and he had just done this all on his own, he would be what the settlement agreement calls unrepresented claimant. An unrepresented claimant got $72,500 less than represented claimants. And the obvious purpose of that is because represented claimants were not to be penalized compared to unrepresented claimants. Well, you know, what explains the fact that Mr. Dobbs was ultimately able to get the enhancement after he maintains he was advised that he wasn't likely to get one? I gave my honest opinion, Your Honor, that he did not qualify for an enhancement under the schedule, but I in no uncertain terms told him I would pursue the enhancement. And it isn't a matter of advocacy in the DePue settlement whether you get an enhancement or not. It's a matter of the settlement facility looks at the records and they say, do you or do you not qualify? I always told Mr. Dobbs that I would pursue the enhancement for him. But nonetheless, I put him in a posture that if he did enroll in the settlement, that he would be eligible to then make the claim for the enhancement. We had all the records to do that. We had collected the records. We were going to, I was going to do that for him. But I'm not claiming any fee for that. To bring up this enhancement, it shouldn't even be before this court in part because there's no real evidence in the record that he even got an enhancement. He's given us an affidavit saying he talked to somebody at the settlement facility who said he would probably be entitled to $95,000. There's nothing in this record yet that I've seen that says he even gets the enhancement. I hope he does because if he's entitled to it, he should get it. But that's not in the record before the court. I think there's a couple of issues, however, that, for example, in your affidavit that you worked 25 hours from retention to discharge and your deceased partner or associate worked 25 too. The staff of the firm worked 102.6. The district court considered this information as well as an additional 15 hours of time between himself and his staff litigating fees and expenses. But that doesn't appear in the record, that 15 hours. No, I didn't keep hard time records of the time I spent, so I'm not going to manufacture them after the fact. I didn't have time records for the time spent from March 1st when I formed my new firm until whatever the date is that I was discharged because it's still as unclear when that was. The October date that counsel likes to refer to, the United States District Court was never given a paper saying I was discharged as counsel. The paper that Mr. Dobbs filled out in October was something sent to the settlement facility, which is in the record, where he said he wanted to change his primary counsel. And he listed my firm as the counsel that had been his primary counsel, and then he didn't list anybody as the substitute counsel. That's not a filing in the United States District Court. He went back and forth a few times. I mean, one of the documents in the record is the e-mail from Mr. Dobbs to me where I continued to tell him, look, I'm going to take care of you and listen until you get other counsel, or we otherwise resolve this. And he wrote to me, it's document AA30 in document number 17, until we can resolve this matter, you are still my attorney, and thus protecting my rights case, et cetera. And that's dated the 4th of April, 2014. And I continued to do that until he filed in the United States District Court in the Northern District of Ohio a paper, a letter saying that he wanted to be pro se. I then properly filed a motion to withdraw, which was required by Judge Katz, and Judge Katz granted the motion. I protected his interests until then. I did what I was supposed to do to protect Mr. Dobbs throughout. Your Honors, I believe, as Judge Rovner raised, that Judge Sharon Johnson Coleman properly did what she was directed to do on remand, which was to consider more facts and evidence in what, if any, should be awarded as a quantum Merowith fee. She did what the law required. We cite the Key v. Sullivan case and the United States v. Barnes case in our papers. Well, part of the problem is it's already been mentioned about lead attorneys, where she mentioned it was lead attorney, you were just leading a lead attorney for her. I was a lead attorney in Mr. Dobbs' case. Right, but it sounds like lead attorney on the. I was not a lead attorney on the MDL, but if what Mr. Dobbs has done here is going to be sanctioned, then anybody who has a case in a multi-district litigation, and we're talking literally hundreds of thousands of cases around the federal system in the United States right now, anybody, once a settlement is announced, can fire their counsel and claim all we owe is a few hundred dollars of an hourly rate times whatever hours they can document in this case. That's not how contingent fee cases work. People do what I did. You get a few clients and you work for all of those clients. Well, I understand. I'm just talking about what the judge put in her findings. Well, when I read it, I knew I was his lead attorney as opposed to my partner, John Gelhausen, or Mr. Aguero's. That's how I read it, is I was the lead attorney. I did most of the work. I hope your honors don't have anything more for me. Even though I have time left, I have nothing further to say. Thank you. Thank you, Mr. Baughman. Schiller? You had no time left, but I said show seven seconds. You may have a minute. All right. Thank you, Your Honor. Once again, the email informing Dobbs that costs would be advanced is, again, avoided like the plague, like it was in the briefs. In the end, our position is extremely simple. Counsel promised to advance costs. When Dobbs asked counsel to make good on that promise, counsel broke it. This is wrongful conduct, and this impacts, if not precludes, quantum error. If there's nothing further, thank you for your time. All right. Thanks to both counsel. The case is taken under advisement.